AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Red Colored Maxwest Phone, Model Uno Flip, IMEI 1: 354552070547684, IMEI 2: 354552070547692

Case No. **17MJ1986**

FILED
JUN 20 2017
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                  DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, Incorporated by Reference Herein.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2
Incorporated by Reference Herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 and 963 | Importation of controlled substances and conspiracy to do the same |

The application is based on these facts:

See Affidavit of Special Agent Jason Palmer, which is hereby inorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Applicant's signature

Jason Palmer, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/20/17

Judge's signature

City and state: San Diego, CA            HON. BARBARA L. MAJOR, Magistrate Judge
*Printed name and title*

# **ATTACHMENT A-2**

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> Red Colored Maxwest Phone, Model Uno Flip
> IMEI 1: 354552070547684
> IMEI 2: 354552070547692
> **(Target Device #2)**

**Target Device #2** is currently in the possession of Homeland Security Investigations evidence vault located at the Deputy Special Agent in Charge office, Otay Mesa, California.

## **ATTACHMENT B-2**

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 1, 2016 through May 10, 2017:

   a.   tending to indicate efforts to import cocaine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

   b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

   c.   tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

   d.   tending to identify travel to or presence at locations involved in the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

   e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections** 952, 960, and 963.

# AFFIDAVIT

I, Jason Palmer, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic devices (collectively **Target Devices**):

   a. Black Colored ZTE Phone, Model Z981
      Serial No. 3297667927FC
      IMEI: 883461030102354
      (**Target Device #1**);

   b. Red Colored Maxwest Phone, Model Uno Flip
      IMEI 1: 354552070547684
      IMEI 2: 354552070547692
      (**Target Device #2**);

as described in Attachments A-1 and A-2, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963 as described in Attachments B-1 and B-2. This search supports an investigation and prosecution of Rosa DE ARCOS ("DE ARCOS") for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. Customs and Border Protection Officers seized the **Target Devices** on May 8, 2017 from the Jeep Wrangler driven by DE ARCOS incident to her arrest for importation of Cocaine. The **Target Devices** are currently in the possession of Homeland Security Investigations (HSI) evidence vault located at the Deputy Special Agent in Charge office, Otay Mesa, California.

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and

1

my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

### EXPERIENCE AND TRAINING

5.   I am a Special Agent for HSI. I have been a Special Agent for approximately sixteen (16) years and have attended basic as well as advanced law enforcement training at the Federal Law Enforcement Training Center located in Brunswick, Georgia. Furthermore, I have participated in numerous drug-related arrests and warrants over the course of my career. I have also consulted with other law enforcement personnel on numerous occasions regarding the enforcement of narcotic-related offenses.

6.   Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a.   Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b.   Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c.   Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d.   Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e.   Drug smugglers will use cellular/mobile telephones to notify or warn their

2

  accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

 f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

 7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

 a. tending to indicate efforts to import cocaine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

 b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

 c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation

3

  with the intent to distribute controlled substances within the United States;

 d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

 e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

 f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

### Investigation Overview

8. On or about May 8, 2017, at approximately 12:36 a.m., DE ACROS applied for admission into the United States from the Republic of Mexico via the vehicle lanes at the San Ysidro, California, Port of Entry. DE ARCOS was the driver, registered owner and sole occupant of a 2008 Jeep Wrangler bearing Nevada plates. The primary CBP Officer received a computer-generated referral upon querying the vehicle's license plate and referred her vehicle to secondary inspection. During secondary inspection, a CBP/Canine Enforcement Officer's Human/Narcotics Detector Dog alerted to the driver's side taillight of DE ARCOS' vehicle and another CBP Officer noted fresh tool markings on the screws holding the taillights in place.

9. The seizing CBP Officer removed fifteen (15) packages weighing approximately 15.68 kilograms (34.49 pounds) from behind the driver and passenger rear brake light assembly. One package's contents field-tested positive for the presence of cocaine. The **Target Devices** were located within the vehicle at the time of the aforementioned incident and seized by the secondary CBP Officer.

10. A review of DE ARCOS' crossing history revealed that she crossed from

Mexico on approximately 22 prior occasions since August 23, 2016. DE ARCOS is a resident of Las Vegas, Nevada.

11. De Arcos is currently charged with violation of 21 USC §§ 952 and 960.

12. In my professional training, education and experience, drug conspiracies require detailed and intricate planning to successfully evade detection. Additionally, in my professional training, education and experience, this requires planning and coordination in the days, weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. This communication, both prior to, during and after the event is often accomplished/attempted via cellular telephone communication(s).

13. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices,** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of DE ARCOS, such as telephone numbers, made and received calls, contact names, e-mail addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**.

## METHODOLOGY

14. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have

functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

15. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

//

//

## CONCLUSION

17. Specifically, as set forth above, given the amount of narcotics, their location behind the vehicle's rear taillight, coupled with the fact that De Arcos was the driver, sole occupant, and registered owner of the vehicle, I believe probable cause exists for the offense. Based on all of the facts and circumstances described above, my training and experience, consultation with other agents in narcotics investigations, and consultation with other sources of information, there is probable cause to conclude that DE ARCOS used the **Target Devices** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963.

18. Because CBP Officers promptly seized the **Target Devices** during the investigation of DE ARCOS' smuggling activities and the devices have been securely stored, there is probable cause to believe that evidence of illegal activities committed by DE ARCOS continues to exist on the **Target Devices**. Due to De Arcos' crossing history, the date range requested for this search covers August 1, 2016 through May 10, 2017.

19. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachments B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Jason Palmer
Special Agent

Subscribed and sworn to before me this 20th day of June, 2017.

_____
The Honorable Barbara L. Major
United States Magistrate Judge

7